UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| |
|---|
| SHARON WILLIAMS, <br><br>  Plaintiff, <br><br> v. <br><br> CITY OF MILLVILLE, et al., <br><br>  Defendants. |

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-7540
(JEI/JS)

**OPINION**

**APPEARANCES:**

CHRISTOPHER J. BASNER P.C.
By:  Christopher J. Basner, Esq.
2 Kings Highway West, Suite 205
Haddonfield, New Jersey 08033
     Counsel for Plaintiff

GEMMEL, TODD & MERENICH, P.A.
By:  Robert P. Merenich, Esq.
767 Shore Road
P.O. Box 296
Linwood, New Jersey 08221
     Counsel for Defendants City of Millville, William Stadnick,
     III, Lauren Van Embden, and Philip S. Van Embden, P.C.

**IRENAS**, Senior District Judge:

Plaintiff Sharon Williams initiated this action pursuant to 42 U.S.C. § 1983 against the City of Millville, William Stadnick, III, Lauren Van Embden, Philip S. Van Embden, P.C., Amanda Mitchem, and New Jersey CVS Pharmacy, LLC to recover for alleged deprivations of her constitutional rights stemming from

1

shoplifting incidents in Millville, New Jersey on August 20th and 21st, 2010.  Following a motion to dismiss, Amanda Mitchem and New Jersey CVS Pharmacy, LLC were dismissed from this case on November 22, 2013.[1]  Currently pending before the Court is the remaining Defendants' Motion for Summary Judgment.[2]  For the reasons set forth below, the Motion will be granted.

## I.

The events giving rise to this lawsuit began on August 20, 2010, at the CVS Pharmacy, 1209 North High Street, Millville, New Jersey.  During the evening of the 20th, Amanda Mitchem ("Mitchem"), a CVS employee, observed two African-American females enter the CVS, "walk[] around for a while," and then leave separately.  (Incident Report 10-020362, Aug. 21, 2010) After the second woman left, Mitchem discovered a missing thirteen-inch television.  (Id.)

A day later, Mitchem noticed the same two women enter CVS at approximately 2:30 p.m.  (Id.)  This time, Mitchem watched one of the women walk out of the store with three thirteen-inch televisions.  (Id.)  As the woman walked out, Mitchem followed

---

[1] *Williams v. City of Millville*, No. 12-cv-7540 (JEI/JS), 2013 WL 6175538 (D.N.J. Nov. 22, 2013).

[2] The Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

closely behind and watched her get into "a black Suzuki," with a New Jersey license plate: YBC69X.  (Id.)  Following this, Mitchem called the Millville Police Department, which dispatched Officer William Stadnick ("Stadnick").  (Id.; Defs. S.O.M.F. ¶ 1)[3]  Stadnick arrived on the scene at 2:52 p.m., where Mitchem relayed these details and showed Stadnick surveillance tapes from the episodes.  (Incident Report 10-020362, Aug. 21, 2010)

Once back at the Millville Police Department, Stadnick entered the New Jersey registration into a state database. (Id.)  The database indicated that license plate YBC69X was linked to a 2008 black Suzuki SX4 sedan, registered to Sharon Williams ("Williams") of Paulsboro, New Jersey, the Plaintiff in this suit.  (Id.)  After obtaining Williams's driver's license photograph, Stadnick determined that Williams appeared in the CVS surveillance footage of the alleged shoplifting.  (Id.)  As a result, Stadnick prepared criminal complaints for the shoplifting incidents on both August 20th and 21st, charging Williams with a violation of N.J.S.A. § 2C:20-11B(1). (Complaint-Warrant 0610-W-2010-001433; Complaint-Warrant 0610-W-2010-001434)

Later that evening, CVS was the victim of a third shoplifting incident.  (Incident Report 10-020386, Aug. 21,

---

[3] References to "Defs. S.O.M.F." are to the Defendants' Statement of Material Facts, submitted pursuant to Local Civil Rule 56.1(a).

2010)  As Stadnick detailed in a separate incident report, he was dispatched to CVS a second time on August 21st at approximately 8:12 p.m.  (Id.)  After arriving, Stadnick met with store manager Sherry Rivera ("Rivera"), who informed Stadnick that two DVD players and an MP3 music player were stolen.  (Id.)  According to Stadnick's report, Rivera told Stadnick that the same woman from earlier in the day returned to the store that evening to shoplift these three items.  (Id.)

The record does not clearly indicate when Williams first appeared in Millville Municipal Court, or met the prosecutor, Lauren Van Embden ("Van Embden").  In Williams's recollection, she first went to Millville Municipal Court in late September 2010 to contest the shoplifting charges.  (S. Williams Dep. at 62:4, Sept. 23, 2013)  In contrast, Van Embden contends that she did not interact with Williams until January 2011, when court records indicate Williams made her second appearance in court and had already entered a not guilty plea.  (Van Embden Aff. ¶¶ 6-7)

In Williams's retelling, after arriving in Municipal Court in September 2010, she first met with Van Embden and Stadnick before seeing the Municipal Court Judge.  (Williams Dep. at 62:18-63:14)  Van Embden offered to let Williams plead guilty in exchange for discharging the shoplifting charge, but Williams declined.  (Id. at 64:16-25)  As Williams explained, any video

4

recording of the shoplifting incident would demonstrate her innocence, and so Williams walked out of the meeting to enter a plea of not guilty. (Id.) Williams contends that Van Embden followed close behind and threatened to have her arrested. (Id. at 63:2-7) In contrast, Van Emdben asserts that she never threatened Williams with arrest, nor did the two of them meet until January 2011. (Van Emdben Aff. ¶¶ 7, 17)

Despite this dispute, the parties do not disagree that a State Trooper arrested Williams on December 10, 2010. (Defs. S.O.M.F. ¶ 30) The arresting officer informed Williams that she had two warrants outstanding from Millville. (Williams Dep. at 81:12-21) Though Williams protested that she already appeared in Millville Municipal Court and appropriately contested the pending shoplifting charges, the police could not reach the appropriate parties in Millville and therefore held Williams in the Salem County Correctional Facility. (Id. at 85:23-86:23)

Williams returned to Millville Municipal Court on a number of other occasions throughout late 2010 and early 2011. (Id. at 107:6-23) In early 2011, apparently in her fifth visit to court, the Millville Municipal Court dismissed the shoplifting charges against Williams for lack of prosecution. (Id. at 107:18-108:1; Van Embden Aff. ¶ 12)

On December 10, 2012, Williams filed suit in this Court alleging that all of the named Defendants violated her civil

rights and committed state-law torts arising from her prosecution for shoplifting.  (Complaint, dkt. no. 1)  Upon their unopposed motion, CVS and Mitchem were dismissed from the case.  *Williams v. City of Millville*, No. 12-cv-7540 (JEI/JS), 2013 WL 6175538 (D.N.J. Nov. 22, 2013).  The remaining Defendants now move for summary judgment.  Williams failed to oppose this motion in a timely fashion, but the Court granted her an extension to do so.  The Court now turns to the arguments and evidence before it.

## II.

### A.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a

6

reasonable fact finder could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252 (1986).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Anderson*, 477 U.S. at 249.

## B.

Video evidence of the events at issue offers an "added wrinkle" to the Court's analysis at the summary judgment stage. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Where video recordings of the events "blatantly contradict" the nonmovant's version of the facts so that no reasonably jury could believe the nonmovant, the court should instead view "the facts in the light depicted by the videotape."  *Id.* at 380-81.

On August 21st, 2010, a security camera installed in CVS captured a woman matching Williams's description entering the

CVS location in Millville.[4]  (CVS Video, Aug. 21, 2010, 2:19:12 p.m.)  In opposing summary judgment, Williams maintains that no one matching her description appears in the video, but after reviewing the footage, the Court concludes that no reasonable jury could believe that to be the case.  (See Pl.'s Opp'n Br. at 4; CVS Video, Aug. 21, 2010 at 2:46:44 p.m., frame 1758; CVS Video, Aug. 21, 2010 at 7:55:47, frame 264)  Stadnick has certified that his counsel has provided the Court with a copy of the CVS surveillance video that Stadnick personally viewed during his investigation, and Williams does not suggest that the videos were modified or tampered with.  (Stadnick Cert. at ¶ 5)

Turning to the contents of the video footage, a woman matching Williams's physical description clearly appears in the recording.  The August 21st afternoon video begins at 2:19:12 p.m. and is nearly forty minutes long.  (CVS Video, Aug. 21, 2010 at 2:19:12 p.m.)  The video shows customers coming and going for approximately twenty-five minutes until an African-American woman matching Williams's description, with her face visible and carrying an empty or nearly empty black bag over her left shoulder, fully comes into view at 2:46:44 p.m. entering the CVS.  (Id. at 2:46:44 p.m., frame 1758)  At 2:48:07, the

---

[4] The Defendants submit a second video from the evening of August 21 as well. (CVS Video, Aug. 21, 2010, 7:49:41 p.m.)  However, the Court only needs to recount the events captured in the first video to resolve Williams's claims.

same woman reappears on the video, walking out of the CVS with a bulging black bag cradled at her left elbow and a box in her right arm. (Id. at 2:48:07, frame 1913) As she proceeds out the door, she triggers the theft detection system. (Id.) The woman immediately steps into a black sedan, visible through the front door of the CVS, which pulls away as a woman in a navy blue shirt appears to take down the car's license plate number. (Id. at 2:48:20) The video continues for another twelve minutes as customers come and go. (Id. at 2:48:20-3:00:20)

Williams asserts that she has never been to this CVS, and in any case could not have been there on August 21st, 2010 because she was catering a party on that day.[5] (Compl. ¶¶ 53, 55) The video, however, so blatantly contradicts this assertion that no reasonable jury could believe Williams.

### III.

The Defendants seek summary judgment on the federal civil rights claims alleged in Count I and the New Jersey civil rights and tort claims alleged in Count II. The Court addresses the federal claims before turning to the state-law claims.

---

[5] Williams testified that she had never been to the CVS in Millville. (Williams Dep. at 84:19-21) In addition, Williams alleged that she catered a party on August 21st, and therefore could not have been at the CVS during the alleged shoplifting incidents. (Id. at 114-16; Compl. ¶¶ 52-53, 55) At oral argument, Williams's attorney indicated that Williams cannot explain why the black Suzuki registered in her name was at the CVS in Millville. In light of the video evidence, this statement and alibi significantly lacks credibility.

9

**A.**

A plaintiff may bring a cause of action for violations of her federal constitutional rights under 42 U.S.C. § 1983. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

To state a claim for relief under this statute, a plaintiff must demonstrate that she has been deprived of a right secured by the Constitution or federal law, and that deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court first considers the municipal liability of Millville, next turns to the claims asserted against Stadnick, and then addresses the liability of the county prosecutor, Van Embden, and her firm, Philip S. Van Embden, P.C.

**1.**

In Count I, Williams brings a claim under § 1983 that Millville is liable for violating her constitutional rights

10

under the First, Fourth, and Fourteenth Amendments.  (Compl. ¶¶ 75-80)

In cases arising under § 1983, municipalities may not be held liable under a *respondeat superior* theory.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1971).  Instead, municipalities are only liable "for their own illegal acts."  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

The Third Circuit has created a two-track path to municipal liability under § 1983, "depending on whether the allegation is based on municipal policy or custom."  *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

> Policy is made when a "decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action" issues an official proclamation, policy, or edict.  A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Mulholland*, 706 F.3d at 237 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Evidence of knowledge and acquiescence may also establish that a custom exists sufficient for finding liability.  *Mulholland*, 706 F.3d at 237.

After a review of the record, Williams has failed to demonstrate any basis for Millville's liability.  The record

11

contains no evidence regarding Millville's policies or customs that bear on Williams's rights under First, Fourth, or Fourteenth Amendments.  In the absence of any policy or custom that violates Williams's rights, the Court cannot conclude that the municipality undertook any illegal act of its own. Millville is therefore entitled to summary judgment on Williams claims under § 1983.

## 2.

Williams asserts a number of claims pursuant to § 1983 against Stadnick.  In particular, the Court understands her Complaint to assert that she was the victim of retaliation in violation of her First Amendment rights, the victim of unlawful arrest, false imprisonment, and malicious prosecution in violation of her Fourth Amendment rights.  (Compl. ¶ 76)  In addition, she alleges that Stadnick deprived her of her Fourteenth Amendment right to procedural due process when he failed to let her review the CVS surveillance video, and then failed to investigate her alibi.  (Id.; Pl.'s Opp'n Br. at 4) Finally, Williams also alleges claims for abuse of process and failure to intervene.  The Court addresses each in turn.

**a.**

To establish a First Amendment retaliation claim, a plaintiff must prove that she was (1) engaged in a constitutionally protected activity; (2) that the defendant responded with retaliation; and (3) the protected activity caused the retaliation. *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013)  "The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." *Id.* (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)).

Williams asserts that her constitutionally protected activity occurred when she proclaimed her innocence and declined to plead guilty when meeting with Van Embden and Stadnick. (Pl.'s Opp'n Br. at 4; Williams Dep. at 62:23-63:2)  As a result, Williams seems to argue that she was forced to return to court on a number of occasions in late 2010 and early 2011, even though Stadnick knew or should have known that Williams did not appear in the CVS surveillance video.  (Compl. ¶¶ 71, 43-47)

However, these facts do not constitute a First Amendment retaliation claim.  Stadnick's efforts to pursue Williams as the CVS shoplifting suspect occurred before Williams asserted her innocence to Stadnick and Van Embden.  As such, Stadnick's actions cannot serve as retaliatory because Williams had not yet proclaimed that she was innocent.  The record contains no other

evidence suggesting Stadnick undertook other retaliatory acts against Williams.  Stadnick is therefore entitled to summary judgment in his favor on Williams's First Amendment claim.

### b.

To succeed on a § 1983 claim for false arrest, false imprisonment, and malicious prosecution, Williams must demonstrate an absence of probable cause.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012) (false imprisonment); *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (malicious prosecution); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) (false arrest).  Probable cause exists when, "based on the factual circumstances, a prudent person could believe that a particular suspect has committed or is committing an offense."  *Islam v. City of Bridgeton*, 804 F.Supp. 2d 190, 197 (D.N.J. 2011) (citing *Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3d Cir. 1997)).  This inquiry is fact-specific.  *Islam*, 804 F.Supp. 2d at 197 (citing *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

Here, Stadnick prepared three criminal complaints charging Williams with violating N.J.S.A. § 2C:20-11B(1), amended to a violation of N.J.S.A. § 2C:20-11C(4).  (Complaint-Warrant, 0610-W-2010-001433; Complaint-Warrant, 0610-W-2010-001434; Complaint-

14

Summons, 0610-S-2010-001437)   This statute defines the criminal

act of shoplifting as:

> For any person purposely to take possession
> of, carry away, transfer or cause to be
> carried away or transferred, any merchandise
> displayed, held, stored or offered for sale by
> any store or other retail mercantile
> establishment with the intention of depriving
> the merchant of the possession, use or benefit
> of such merchandise or converting the same to
> the use of such person without paying to the
> merchant the full retail value thereof.

N.J.S.A. § 2C:20-11B(1).   To show an absence of probable cause,

Williams must demonstrate that no prudent person could believe

that she committed this offense.

   In light of the video evidence in this case, Williams

cannot make the requisite showing to sustain her claims for

false arrest, false imprisonment, and malicious prosecution.

Just taking the CVS surveillance video from August 21, 2010 at

2:46:44 p.m., there is no dispute that an African-American

woman, matching Williams's description, entered the CVS in

Millville.   (CVS Video, Aug. 21 at 2:46:44 p.m., frame 1758)

Less than two minutes later, that same woman (now visible from

behind) reappears on the video, walking out of the CVS with a

bulging black bag on her left elbow, a box in her left hand, and

a box in her right arm.   (Id. at 2:48:07 p.m., frame 1913)   The

theft detection system triggers as she passes through.   (Id.)

Immediately following the unidentified woman's exit, she steps

into a black sedan that is waiting at the curb while Mitchem took down the license plate as the car pulls away. (Id. at 2:48:20 p.m., frame 1968)

After Stadnick responded to CVS a few minutes later, Mitchem gave him the license plate information and described the events of that afternoon and the prior evening. (Incident Report 10-020362, Aug. 21, 2010) Stadnick then returned to the Millville Police Department to search the motor vehicle registration database. (Id.) This search revealed that a 2008 black Suzuki SX4 was registered to Sharon Williams, whose picture in the motor vehicle database matched the description of the woman entering the CVS at 2:46:44 p.m. on August 21st. (Id.) Following his review of the surveillance footage, photographs made from that footage, and comparison with Williams's picture in the motor vehicle database, Stadnick concluded that Williams appeared in the surveillance footage. (Id.) In view of Stadnick's actions, Williams cannot demonstrate that Stadnick acted without probable cause and therefore her claims for false arrest, false imprisonment, and malicious prosecution must fail.

### c.

The Fourteenth Amendment prohibits a state from depriving persons of life, liberty, or property without due process of

law.  U.S. CONST. amend. XIV, § 1.  To state a claim under § 1983 for a violation of the rights to procedural due process, courts apply a two-part analysis: "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal quotation marks omitted).

Williams argues that despite her requests to view the CVS surveillance video, Stadnick refused to share it with her. (Pl.'s Opp'n Br. at 4)  By extension, Williams seems to contend that if she were permitted to view the surveillance tapes, she would never have been arrested on December 10, 2010, nor would she have had to appear in municipal court on other occasions. (Compl. ¶¶ 12-14, 43-47, 57)  Indeed, Williams recounted that she appeared in court on five separate occasions because the state obtained continuances each time that Mitchem, the state's witness, failed to appear to testify.  (Williams Dep. at 107:10) However, at her fifth appearance where Mitchem did not appear, Williams acknowledged that the Municipal Court Judge dismissed the case for lack of evidence.  (Williams Dep. at 107:20-23)

Though Williams made five separate trips to court, on the fifth trip the state dismissed the charges.  In short, Williams's rights were vindicated when the state failed to

present the evidence against her and was forced to dismiss the charges. As such, Stadnick is entitled to summary judgment on Williams's procedural due process claim.

### d.

Lastly, Williams asserts a claim for abuse of process under § 1983. "A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989). The key to the abuse of process claim is "not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994). To establish a claim for malicious abuse of process, "there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process." *Ference v. Twp. of Hamilton*, 538 F.Supp. 2d 785, 798 (D.N.J. 2008).

Williams has failed to provide any evidence supporting her abuse of process claim. The undisputed record contains no indication that Stadnick's efforts to level charges against Williams stemmed from anything besides his conclusion that Williams appeared in the CVS surveillance video. Though Williams contends that Van Embden threatened her with arrest

while discussing a plea bargain for the shoplifting charge,[6] there is no indication that Stadnick ever made a similar threat nor pursued the shoplifting charges out of any ulterior motive.[7] As such, Stadnick is entitled to summary judgment on this claim.

Finally, because Williams has failed to demonstrate any violation of her constitutional rights, Stadnick is also entitled to judgment for failure to intervene.

### 3.

Though Williams has failed to clearly define the nature of her § 1983 claim against Defendants Lauren Van Embden and Philip S. Van Embden, P.C., the Court understands her to make two claims: for malicious prosecution in violation of her Fourth Amendment rights, and infringement of her First Amendment right to free speech.  In response, these Defendants contend that they are entitled to absolute prosecutorial immunity.[8]

---

[6] A contention that Van Embden disputes.  See Van Embden Aff. ¶ 17.  However, resolution of this disputed fact is not necessary to decide the claim asserted against Stadnick.

[7] Williams suggests that a recent lawsuit filed in New Jersey Superior Court alleging corruption in the Millville Police Department manifests some improper motive in her prosecution for shoplifting.  (Pl.'s Opp'n Br. at 5; Chris Torres, *Detective's Lawsuit Alleges Corruption, Retaliation at Millville PD*, THE DAILY JOURNAL (Feb. 10, 2014), http://www.thedailyjournal.com/article/20140211/NEWS01/302110014/Detective-s-lawsuit-alleges-corruption-retaliation-Millville-PD?sf22672345=1)  However, there is no indication that the allegations included in the lawsuit have any bearing on Williams's prosecution for shoplifting.  As such, Williams's argument is without merit and does not support her abuse of process claim.

[8] In their Brief, the Defendants refer to the law offices of Nathan Van Embden as Lauren Van Embden's employer, rather than the named Defendant, Philip S.

The absolute prosecutorial immunity doctrine grants prosecutors immunity from § 1983 suits when "act[ing] within the scope of [their] duties initiating and pursuing a criminal prosecution." *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (alterations in original) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

In her brief opposing summary judgment, Williams contends that she was entitled to view the CVS surveillance video when she appeared in Municipal Court on September 27, 2010. (Pl.'s Opp'n Br. at 3) Williams further asserts that during her appearance, Van Embden "threatened" her, which resulted in "shutting up [Williams] in violation of the First Amendment." (Id. at 4) Even assuming Williams has accurately recounted the circumstances of her initial meeting with Van Embden in the Municipal Court, Van Embden and her firm are still entitled to prosecutorial immunity. In her testimony, Williams explained

---

Van Embden, P.C. (Defs.' Br. at 5) As Philip S. Van Embden, P.C. appears in the caption to the Defendants' filings and is the named Defendant in the Complaint, the Court assumes that this is a simple oversight.

that the Municipal Court Judge instructed her to meet with Van Embden before she could appear to enter a plea. (Williams Dep. at 64:12-14) At that point, Van Embden offered Williams the opportunity to plead guilty, "and we'll discharge this."[9] (Id. at 64:18-20) Williams refused, maintained that if the state had surveillance video it would have to know that she was innocent, and walked out of the room to see the Municipal Court Judge. (Id. at 64:22-25) After that, "[the conversation] got a little out of hand" and Williams left the room after this short exchange to enter a not guilty plea before the Municipal Court Judge, while Van Embden followed her and apparently threatened to have her arrested.[10] (Id. at 63:1-7)

However, these circumstances simply demonstrates that Van Embden offered a plea deal, which Williams refused. As such, even if Van Embden had threatened Williams, all of Van Embden's actions fall within Van Embden and Philip S. Van Embden, P.C.'s role as an advocate for the state, and were undertaken in

---

[9] The record does not clarify the precise deal that Van Embden offered, as only Williams's deposition testimony was submitted to the Court to describe these negotiations. (Williams Dep. at 64:19-20) However, the specifics of any deal are immaterial because conversations about plea bargains are well within the acts that a prosecutor would undertake in anticipation of judicial proceedings, and are part of the prosecutor's role as an advocate for the state.

[10] Van Embden contends that she never threatened Williams. (See Van Embden Aff. at ¶ 17) Such dispute is irrelevant for purposes of determining the application of prosecutorial immunity here because even if Van Embden threatened to have Williams arrested, statements in preparation of prosecution would still be protected by absolute prosecutorial immunity. Buckley, 509 U.S. at 273.

anticipation of Williams's entry of a plea in a judicial proceeding.  Because of this role, Van Embden and Philip S. Van Embden, P.C. are entitled to absolute prosecutorial immunity and summary judgment in their favor.

### B.

Count II asserts eight New Jersey state-law claims.[11]  The Defendants move for summary judgment on these claims of assault, battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, abuse of process, and failure to intervene, arguing that Williams has failed to file a notice pursuant to the New Jersey Tort Claims Act ("TCA").

To state a claim under the TCA, "[n]o action shall be brought against a public entity or public employee . . . unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. § 59:8-3.  That procedure requires a plaintiff to sign

---

[11] In actions in which the district court has original jurisdiction, 28 U.S.C. § 1367(a) grants supplemental jurisdiction over those claims that are part of the same case or controversy.  While § 1367(c)(3) permits a court to decline to exercise supplemental jurisdiction where it has dismissed "all claims over which it has original jurisdiction," a court may exercise its discretion to retain or decline jurisdiction over remaining claims that are part of the same case or controversy.  *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).  Because Williams's attorney appeared at oral argument and requested to withdraw the state-law claims because of Williams's failure to comply with the New Jersey Tort Claims Act, the Court retains jurisdiction and grants Williams's dismissal of the claims because they arise from the same set of circumstances, and doing so comports with efficiency and convenience.

and file a notice of tort claim with the relevant public entity within 90 days from the accrual of the claim.  *Id.* § 59:8-8.  A plaintiff who fails to file notice within the 90-day period is "forever barred from recovering against [the] public entity or employee."[12]  *Id.*

Further analysis of the TCA is moot because Williams has withdrawn the allegations contained in Count II.  At oral argument, Williams's attorney conceded that he had not filed any tort claim notice with the state, nor would any notice be timely.  Moreover, Williams indicated in her deposition that she did not know what a "tort claims notice" was, nor had she filed "any manner of document" with Millville alerting them of her allegations.  (Defs. S.O.M.F. ¶ 33; Williams Dep. at 116:23-117:6)  In light of these facts, Williams's attorney withdrew the allegations contained in Count II and the Court will therefore dismiss these state-law claims.

## IV.

Finally, Williams argues that she should be granted leave to amend her Complaint, filed on December 10, 2012, as a result

---

[12] Upon a motion by the plaintiff supported by affidavits, a court has discretion to allow a late filing of a notice of claim if made within one year of the claim accrual date, provided that (1) the plaintiff demonstrates "extraordinary circumstances" for the failure to meet the 90-day filing requirement and (2) that the defendant is not "substantially prejudiced thereby."  N.J.S.A. § 59:8-9.

of new discovery.  Federal Rule of Civil Procedure 15(a) governs
the amendment of a pleading, and permits parties to amend their
pleadings once as a matter of course within twenty-one days of
serving the pleading, or twenty-one days after a responsive
pleading or motion is served.  In addition, Rule 15(a)(2) also
provides that "[t]he court should freely give leave [to amend]
when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Third
Circuit directs that such leave should be "liberally" granted.
*See Pivalis v. Lockheed Martin Corp.*, No. 12-cv-1354 (NLH/JS),
2013 WL 1164498, at *5 (D.N.J. Mar. 20, 2013) (collecting Third
Circuit cases).

When considering a motion to amend, district courts should
consider the following:

> In the absence of any apparent or declared
> reason – such as undue delay, bad faith or
> dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by
> amendments previously allowed, undue
> prejudice to the opposing party by virtue of
> allowance of the amendment, futility of
> amendment, etc. – the leave sought should, as
> the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Denying a motion to
amend in the absence of any of these factors is "an abuse of
discretion." *Alvin*, 227 F.3d at 121.

Williams contends that a recent lawsuit filed in New Jersey
Superior Court, <u>Miller v. City of Millville, et al.</u>, No. Civ. L
43-14, offers grounds for amending her pleadings and engaging in

24

additional discovery.  (Pl.'s Opp'n Br. at 5)  However, permitting such amendment would be futile.  The concerns regarding unsolved felony crimes among Millville Police detectives do not concern any of the named Defendants here. Moreover, investigation into the Millville Police Department's mishandling of felony crimes does not implicate any of Williams's aforementioned civil rights claims.  As a result, the Court will not grant Williams's motion to amend.

## V.

In light of the foregoing, the Defendants' Motion for Summary Judgment is granted.  An appropriate Order accompanies this Opinion.

Date: 3/13/14

JOSEPH E. IRENAS, S.U.S.D.J.